## POTTS *et al. v.* PRIOR *et al.*

1. Where exceptions to an auditor's report are overruled, and proper exceptions pendente lite are taken to the judgment overruling them, and a final decree is entered adopting the auditor's report, a bill of exceptions assigning error on the pendente lite exceptions, and also on the final decree, will not be dismissed because the assignment of error on the final decree is general.

(*a*) The final decree was not a consent decree.

2. The construction placed on the will of Asa Prior by the auditor is affirmed.

3. Where in a suit to subject trust property a decree has been rendered, adjudging that the plaintiff is entitled to recover a certain amount to be paid from the income, and also adjudging that a stated amount of the income had been added to the corpus in the purchase of a certain house, which house is directed to be sold by the trustee, and from the proceeds of sale this amount shall be paid to the plaintiff, and the balance of the funds is to be held subject to the further order of the court; and where the trust becomes executed before the final decree, in the distribution of the proceeds of the house the amount of the income which had been used in its purchase, which under the former decree was adjudged to be subject to the plaintiff's debt, should be applied to the payment of the judgment before the remainder of the fund is distributed among its owners.

Submitted January 15,—Decided July 25, 1908.

Exceptions to auditor's report. Before Judge Edwards. Polk superior court. January 17, 1907.

On June 27, 1902, L. S. Ledbetter, as trustee of Sarah A. A. Prior, brought an equitable petition in Polk superior court against his cestui que trust, and against James M. Prior and other remaindermen under the will of Asa Prior, deceased, for direction. He alleged, that the trust estate consisted of a certain brick storehouse and lot, and a certain house and lot in Cedartown, Georgia; that his cestui que trust was about seventy years old, and very feeble; that she had no children and would have none; that the income from the trust estate was, and had been for a number of years, insufficient for her support; that her condition required constant attention, and he had contracted with Asa P. Potts and Louisa Potts for a number of years to take care of her at the rate of $150 per year, provided the income from the trust estate was sufficient to pay this sum, or if the court would provide for such payment in the event the income was insufficient; that certain income had been taken in former years and invested along with the corpus of

the trust estate in the real estate which represented the entire trust estate; and that this income when so invested was in money. Petitioner prayed, for direction with reference to the support of his cestui que trust; that he be allowed to pay Asa Potts and Louisa Potts the amount agreed on, using any previously unused income that had gone into the real estate representing the trust estate, and, if necessary, to encroach upon the corpus of the trust estate for the purpose of such payment, and to provide for her an adequate support. On July 5, 1902, J. M. Hunt, who had accepted the appointment as guardian ad litem for Sarah A. A. Prior, filed his answer, admitting the facts set out in the petition to be true.

At the appearance term Asa P. Potts and Louisa Potts filed their answer in the nature of a cross-bill, admitting the allegations of the petition of the trustee; and alleging, that the trustee was then due them under his contract a balance of $348 for their services rendered in the care of the cestui que trust; that the income from the trust estate was insufficient to pay for the support of the cestui que trust; and that $155.97 of income accrued in former years, and unused, had been invested with the corpus in the real estate representing the trust estate. They prayed for a judgment for the sum due them, that their contract with the trustee be confirmed, and that the house and lot in Cedartown be sold to pay them. The defendants James M. Prior and the other remaindermen filed their answer admitting the general charges of the petition to be true as to the general history of the trust estate; but they denied the claim of Asa P. and Louisa Potts, and also denied that any of the income from the trust estate had been invested in the realty now composing the corpus of the trust estate, and asked that all the prayers of the petition be denied. The trustee filed an amendment, admitting the allegations in the cross-petition of Asa P. and Louisa Potts, and alleging that the necessities of his cestui que trust required the expenditure of much more than the income from the trust estate, and that he could not pay them the sum due from the income. He made an exhibit of his accounts, asking for a general settlement, and for direction whether he could apply the $155.97, income in former years which had been invested by a former trustee with the corpus of the trust estate, to the support of his cestui que trust.

On August 23, 1902, Sarah A. A. Prior, for herself, and with

Hunt, her guardian ad litem, filed an intervention in the nature of a cross-bill, setting up that she was one of the five deaf and dumb children of Asa Prior, who died in 1853, testate. She attached as an exhibit a copy of her father's will, the material portions of which are as follows: "Item 3rd. I give and bequeath to my son, Middleton Prior, the use and benefit during his life of [certain described property] as a part of his distributive share of my estate, subject to such limitations as are hereinafter named." Items 4th, 5th, 6th, and 7th devise certain property respectively to his sons Ephriam W. and Lucius A., and to his daughters Angelina and Sarah Ann Abagail, in the same manner and subject to the same limitations as in the devise to Middleton made in the 3rd item. "Item 8th. I give, bequeath, and devise to my said deaf and dumb children, to wit, Middleton, Ephriam W., Lucius A., Angelina, and Sarah Ann Abagail, each the use and benefit, during their natural lives, of one thousand [dollars] over and above and in addition to the equal distributive share of my said estate, subject to such limitations as are hereinafter named." Item 9th devises the residue of his estate, share and share alike, to all his children, and provides that certain of his other children shall account for named advancements. "Item 10. It is my will and desire, and I hereby direct, that the property which shall go to each one of my said deaf and dumb children, to wit, Middleton, Ephriam W., Lucius A., Angelina, and Sarah Ann Abagail, shall only go to them and rest in each of them as life-estate; and whenever they or either of them shall die, such property shall be equally divided among all my children and their legal heirs, unless one or all of them, said deaf and dumb children, should die leaving a child or children; in that event their said property shall descend in fee simple to their children and be not divided amongst my children; and I desire and direct that my executors hereinafter named shall upon my death appoint a good and solvent trustee or trustees for each of my said deaf and dumb children, to take charge of and manage their property and see that the same is not squandered. Said trustee or trustees having the right to control the same for the support, use, and benefit of my said daughters during their lives, and also do the same for my deaf and dumb sons, holding said trustee or trustees responsible for the property bequeathed as aforesaid to my said deaf and dumb children, and any money

or any of the capital sum or natural increase of said property shall not be expended for the support of such children, but limiting their expenditures to the annual income from said property." The remaining items of the will give certain instructions as to dividing his negro property, and appoint his executors. It was alleged that Sarah A. A. Prior was "entitled absolutely, and distinct from, and not connected with the trust estate created under the will of her father, Asa Prior, for her benefit, to the sum of $155.97 for her support, which had been derived in former years from her annual income on the trust property, but which had been, without and against her consent, put by her then trustee into the corpus and invested along with the corpus into the real estate which now composed the entire trust estate; and that she was further entitled to the sum of $1,876.33, which belonged to her independent of the trust estate created as aforesaid by the will of Asa Prior, said sum consisting of the sum of $452.14 going to her under said will and as an heir at law from the estate of her brother E. W. Prior, and the sum of $565.78 in like way from the estate of her brother Middleton Prior, these aggregating the sum of $1,017.92 corpus, and of the sum of $155.97 above referred to, and the balance from the income derived from the estates of her said two brothers who had died without leaving issue." It was alleged that while these sums were hers individually, they had been invested by a former trustee in the corpus of the trust estate; she prayed for a decree that these sums be hers in fee and unconditionally, for a sale of the realty, and for a judgment in her favor from the proceeds in proportion of her special claims to the amount invested in the trust estate. The answer of the remaindermen denied the allegations of this cross-petition, and also set up a plea of the statute of limitations. Upon these pleadings, after hearing evidence, the judge of the superior court, the Hon. Charles G. Janes, on Oct. 6, 1902, signed a decree, denying the prayer to encroach upon the corpus of the estate; adjudging that the trustee was indebted to Asa P. and Louisa Potts in the sum of $348, and that $155.97 of the income of the estate had been withheld from the cestui que. trust and invested with the realty then composing the trust estate, which was subject to the judgment rendered in favor of Asa P. and Louisa Potts; and directing, if there was no accumulated income on hand, that the house and lot be sold, and that out of the proceeds

they be paid the sum of $155.97. Under the terms of this decree the trustee was allowed to continue their employment.

Thereafter, and prior to a final disposition of the case, Sarah A. A. Prior died, leaving a will wherein Asa P. Potts was appointed her executor, bequeathing to him her estate, including her claims and rights against the trust estate as set out by her cross-petition. He qualified as executor and filed his intervention in the case, adopting all the allegations of the cross-petition theretofore filed by Sarah A. A. Prior and her guardian ad litem, Hunt, and praying that he be made a party in lieu of his testator and Hunt. He prayed that all the remaindermen be made parties, and that a full settlement of account be made with Ledbetter, trustee. The trustee filed an amendment, setting up the ending of the trust estate, and praying for an account and settlement, and for his discharge. Potts, executor, was made party in lieu of his testatrix and her guardian ad litem. All the parties joined in the application for sale, and L. S. Ledbetter was appointed by the court as commissioner to sell the land. The land was sold, and the commissioner had the money on hand ready for distribution. At this stage of the proceedings the case was referred to an auditor. On the hearing before him all the issues previously made by the pleadings, save such as were covered by the decree rendered by Hon. Charles G. Janes, as heretofore stated, were abandoned, "except the issues made by the cross-petition of Sarah A. A. Prior and J. M. Hunt, her guardian ad litem, and which were adopted subsequently by the intervention of Asa P. Potts as executor of said Miss Prior; and the facts and figures set forth in reference to said estate presented with said cross-bill . . were admitted to be correct." The report of the auditor was adverse to Asa P. Potts and Louisa Potts, and Asa P. Potts, executor, who on March 6, 1906, filed their exceptions of law and fact to the report. These exceptions were overruled by the judge of the superior court on May 28, 1906, and exceptions pendente lite were filed to this ruling. On July 11, 1906, the judge passed a final decree, sustaining the auditor's report, and directing a distribution of the funds in the hands of the commissioner. On January 17, 1907, the following judgment was entered: "By consent of counsel and on motion made to vacate the within decree [of July 11, 1906], it is ordered and adjudged by the court that the within decree, as signed by Hon.

A. L. Bartlett, Judge, is vacated and set aside, and the decree is now made the judgment of the court, and is now signed and made effective from and as of this date, and shall be taken as passed by the court on this day. Let the same be filed this day. This January 17th, 1907. [Signed] Price Edwards, J. S. C., T. C." Error is assigned upon the pendente lite exceptions, and on the final decree.

*C. G. Janes, Janes & Hunt, Bunn & Bunn, W. H. Trawick,* and *C. C. Bunn Jr.,* for plaintiffs in error. *Blance & Tison,* contra.

Evans, P. J. 1. Upon the call of the case in this court the defendants in error made a motion to dismiss the bill of exceptions, upon the grounds, (1) that there is no legal or valid exception to any final ruling of the court below, on which to predicate other assignments of error; (2) that there is no sufficient exception to a final decree on which to predicate the exceptions pendente lite; and (3) because the final decree in the case was rendered by consent. The auditor filed a report adverse to the plaintiffs in error, to which they filed exceptions of law and fact. These exceptions were overruled by the trial judge. To this ruling exceptions pendente lite were duly made and certified. The final decree was in accordance with the finding of the auditor, and was controlled by that finding. In the bill of exceptions error was assigned generally on the final decree, and specifically on the pendente lite exceptions. In *Lyndon* v. *Ga. Ry. & Elec. Co.,* 129 *Ga.* 354 (58 S. E. 1048), it was held: "If the ruling complained of as erroneous is one preceding the final judgment, and if it is specifically made the subject of exception and of proper assignment of error, and the final judgment is excepted to, not because of additional error in it, but because of the antecedent ruling complained of, which entered into and affected the further progress or final result of the case, a general exception to the final judgment and a specific assignment of error on the antecedent ruling will suffice . . to give the reviewing court jurisdiction."

Nor is there any merit in the contention that the final decree was entered by consent, and plaintiffs in error are therefore estopped from excepting to it. The final decree was signed by Judge Bartlett on July 11, 1906. A motion was made to set this decree aside, the grounds of which do not appear in the record. On January 17, 1907, Judge Edwards entered the following order: "By con-

sent of counsel and on motion made to vacate the within decree, it is ordered and adjudged by the court that the within decree . . is vacated and set aside, and the decree is now made the judgment of the court, and is now signed and made effective from and as of this date, and shall be taken as passed by the court on this day." There is nothing in the face of the decree thus vacated and re-signed that indicates that it is a consent decree; and the order passed by consent was nothing more than a consent that the decree theretofore be set aside and re-signed as of January 17, 1907. The only things consented to were the setting aside of the decree theretofore signed, and a re-signing as of that date the decree previously passed, by the judge then presiding. A case may be by consent submitted to the judge without a jury, to hear and pass upon both questions of law and fact; but a decree reciting such consent could not be construed into a waiver of the right of either party to except to the judgment so rendered. The motion to dismiss is denied.

2. The exceptions to the auditor's report raise two questions. The first is, did the auditor err in finding that the shares coming to Sarah A. A. Prior as remainderman under the will of Asa Prior, from the estates of her deaf and dumb brothers, Ephriam W. and Middleton E. Prior, did not come to her absolutely in fee simple, but she had and took therein only an estate for life, which terminated upon her death? Plaintiffs in error contend that these shares came to her in fee, as her individual and absolute property, and that she took the same independently of the trust. The will of Asa Prior provided three sources from which the estate of his five deaf and dumb children should be derived. The 3d, 4th, 5th, 6th, and 7th items of the will bequeath certain personal property for their use during their natural lives, subject to such limitations as are made in subsequent parts of his will. The 8th item devises to each of them one thousand dollars in addition to their equal distributive share of his estate, "subject to such limitations as are hereinafter named." The 9th item devises to them along with his other children "an equal distributive share," except that, as above stated, they are to have $1,000 more than their equal distributive share, subject to the limitations named. The 10th item directs that the "property which shall go to each one of my said deaf and dumb children . . shall only go to them and rest in

each of them as a life-estate; and when either of them shall die, such property shall be equally divided among all my children and their legal heirs, unless one or all of them, said deaf and dumb children, should die leaving a child or children; in that event their said property shall descend in fee simple to their children and be not divided amongst my children," and directs his executors to appoint a good, solvent, and responsible trustee "to take charge of and manage their property and see that the same is not squandered, . . and any money or any of the capital sum or natural increase of said property shall not be expended for the support of such children, but limiting their expenditures to the annual income from said property." The cardinal rule for the construction of a will is the intention of the testator. The testamentary scheme of the testator is made clear when all the provisions of his will are considered. He had several children, five of whom were mutes. In making a distribution of his estate he gave each of his mute children $1,000 in excess of his other children. He was careful to limit the interest devised to each mute child to a support during life. In order to effectually protect his unfortunate children from the hazards and perils of their unfortunate condition, he provided for the appointment of a trustee, who was to manage the property bequeathed to them, and support them from the income. Upon the death of one of them leaving issue, the property devised to such deceased child passed to his or her issue. But if any one died without issue, the property of the decedent would be divided amongst all of the testator's children; but the portion going to the mutes would not pass to them in fee simple, but would come within the operation of the 10th item of the will, which limited their interest to the income for life. And upon the death of the last survivor without issue, the trust was to cease and the property in the hands of the trustee was to be disposed of as provided in the will. The testator's intent was clearly to provide an ample support for these unfortunates during their lives, and to safeguard his benefaction to them, that it should not be squandered or otherwise lost. No part of the corpus of the several bequests was to be encroached on, and the trustee was limited to the income of the property bequeathed for their support. We therefore concur in the finding of the auditor that upon the death of the brothers of Sarah A. A. Prior she did not take in fee

simple her share of the funds bequeathed to them, but that such funds passed to the trustee under the trust created by the 10th item of her father's will.

3. The other question raised by the exceptions to the auditor's report is, did he err in holding and finding that the sum of $348, due Louisa and Asa P. Potts by the decree of Oct. 6, 1902, was not a lawful charge against the funds from the sale of the trust property? It is contended, that the judgment in their favor is conclusive and final; that the undisputed facts show that unexpended income sufficient to pay this judgment had gone into the trust estate; and that there were sufficient funds in the hands of the trustee, received from the income of the trust property, to pay off the judgment. From the record and undisputed evidence it appears that on October 6, 1902, the judge of the superior court, with all the parties before him, rendered a decree setting out that there was in the hands of the trustee the sum of $155.97 of the income of the trust estate, which had been invested along with the corpus of that estate, to which the cestui que trust was entitled for her support; that the trustee was indebted to Asa P. and Louisa Potts in the sum of $348, which was adjudged to be a charge upon the income; that the trustee sell the house and lot "and out of the proceeds of said sale to pay Asa P. Potts and Louisa Potts, or their attorneys, the sum of $155.97." The findings of the auditor showed that there had been paid on this judgment out of subsequent income from the trust estate the sum of $169, leaving a balance of $179, more than enough to absorb the $155.97 of invested income adjudged to be subject to their judgment. This judgment of October 6, 1902, was unexcepted to, and is conclusive of the right of Louisa and Asa P. Potts to recover the sum of $155.97 arising from the sale of the property upon their judgment upon which there was an unpaid balance of a larger sum. The auditor therefore erred in not finding in their favor upon this question.

*Judgment affirmed, with direction. All the Justices concur.*